

08 CV 3584

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION; AMERICAN CIVIL LIBERTIES UNION FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>Defendant. | [RECEIVED stamp: APR 15 2008 U.S.D.C. S.D.N.Y. CASHIERS]<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF**<br><br>Civil Action No. |

**COMPLAINT FOR INJUNCTIVE RELIEF**

1.      This is an action for injunctive and other appropriate relief under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiffs American Civil Liberties Union and American Civil Liberties Union Foundation (collectively "ACLU") seek the immediate processing and release of records plaintiffs requested through the FOIA from defendant Federal Bureau of Investigation ("FBI").

2.      Plaintiffs submitted a FOIA request ("Request") to the FBI on November 29, 2007, after the Department of Defense ("DoD") released records to the ACLU in response to a separate FOIA lawsuit that suggested the FBI may be issuing National Security Letters ("NSLs") for the military in DoD investigations. Plaintiffs' Request sought records concerning the FBI's issuance of NSLs in non-FBI investigations or at the behest of other agencies such as the DoD. The Request also sought records concerning the FBI's implementation and interpretation of its power to impose non-

disclosure obligations on NSL recipients since Congress amended the NSL statutes in 2006.

## Jurisdiction and Venue

3.  This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. § 552(a)(4)(A)(vii). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

## Parties

4.  Plaintiff American Civil Liberties Union is a nationwide, non-profit, non-partisan organization with over 500,000 members dedicated to the constitutional principles of liberty and equality.

5.  Plaintiff American Civil Liberties Union Foundation is a separate 501(c)(3) organization that educates the public about civil liberties and employs lawyers who provide legal representation free of charge in cases involving civil liberties. It has filed multiple FOIA requests pertaining to the government's use of NSLs and has also challenged the legality of the NSL power in multiple lawsuits.

6.  Defendant FBI is a Department of the Executive Branch of the United States Government. The FBI is an "agency" within the meaning of 5 U.S.C. § 552(f)(1).

## Background

### National Security Letters

7.  NSLs are written demands for records issued by government agencies to seek the production of a broad array of sensitive information about individuals within the United States. There are five statutory provisions that grant power to issue NSLs. The

2

FBI can issue NSLs to obtain subscriber information, toll billing records or electronic communication transactional records from electronic communication service providers pursuant to 18 U.S.C. § 2709. The FBI can also issue NSLs that demand credit account information pursuant to 15 U.S.C. § 1681u. Agencies authorized to conduct intelligence or terrorism investigations can request financial and credit records pursuant to 12 U.S.C. § 3414 and 15 U.S.C. § 1681v. Finally, 50 U.S.C. § 436 allows government agencies to issue demands for financial, credit, and travel information about employees suspected of espionage or terrorism.

8.  NSLs are issued without probable cause and without any prior judicial approval. The USA Patriot Act, Pub. L. 107-56, Title V, § 505, passed in October 2001, vastly expanded the scope of the NSL authority, enabling the government to use NSLs to obtain personal information about individuals who are not suspected of any wrongdoing. Additionally, until 2006, the NSL statutes' non-disclosure provisions categorically and permanently prohibited NSL recipients from disclosing that the government had sought or obtained information from them.

9.  In 2006, Congress amended the NSL nondisclosure provisions. The new law allows agencies unilaterally to issue gag orders on a case-by-case basis and strictly confines the ability of NSL recipients to challenge such orders in court. The reviewing court may modify or set aside gag orders only if it finds that there is "no reason to believe that disclosure may endanger the national security of the United States, interfere with a criminal, counterterrorism, or counterintelligence investigation, interfere with diplomatic relations, or endanger the life or physical safety of any person." 18 U.S.C. § 3511(b)(2). Moreover, if a designated senior government official "certifies that disclosure may

endanger the national security of the United States or interfere with diplomatic relations," the certification must be "treated as conclusive unless the court finds that the certification was made in bad faith." The new law also criminalizes certain violations of gag orders.

### Public Concern About the NSL Authority

10. In March 2007, the Justice Department's Office of the Inspector General ("OIG") issued its first report about the FBI's use of NSLs between calendar years 2003 and 2005. The OIG found that the FBI had substantially underreported to Congress the number of NSLs it had issued; that in some cases the FBI issued NSLs even where no underlying investigation had been approved; that some NSL recipients had provided the FBI with information to which the agency was not entitled, including voicemails, emails, and images; and that the FBI issued more than 700 so-called "exigent letters," which were authorized neither by the NSL statutes nor by any other law.

11. The OIG's report generated significant media attention. *See, e.g.*, *Bush Addresses Misuse of FBI Subpoenas*, N.Y. Times, Mar. 11, 2007; Lara Jakes Jordan, *Gonzales, Mueller Admit FBI Broke Law*, Wash. Post, Mar. 10, 2007; Richard Schmitt, *FBI Abuses May Lead to Patriot Act Limits*, L.A. Times, Mar. 10, 2007; R. Jeffrey Smith, *Report Details Missteps in Data Collection*, Wash. Post, Mar. 10, 2007; David Stout, *FBI Head Admits Mistakes in Use of Security Act*, N.Y. Times, Mar. 10, 2007; Dan Eggen and John Solomon, *FBI Audit Prompts Calls for Reform*, Wash. Post, Mar. 10, 2007; Kelli Arena and Elaine Quijano, *Audit: FBI's Patriot Act Snooping Broke Rules*, CNN.com, Mar. 9, 2007; Barton Gellman and John Solomon, *Frequent Errors in FBI's Secret Records Requests*, Wash. Post, Mar. 9, 2007; Glenn Greenwald, Editorial, *The FBI's Lawbreaking is Tied Directly to President Bush*, Salon.com, Mar. 9, 2007; Tim

Grieve, *Inspector General: FBI is Misusing "National Security Letters,"* Salon.com, Mar. 9, 2007.

12. Major editorial pages called on both Congress and the FBI to put an end to abusive NSL practices and to evaluate whether the existing NSL statutes should be amended to prevent further abuse. *See, e.g.*, Editorial, *Abuse of Authority*, Wash. Post, Mar. 11, 2007; Editorial, *The Failed Attorney General*, N.Y. Times, Mar. 11, 2007; *see also*, John Doe, Op-Ed., *My National Security Letter Gag Order*, Wash. Post, Mar. 23, 2007. Members of Congress also convened a number of hearings on the abuses and the scope of the NSL authority. *See, e.g.*, *Hearing of the Senate Select Committee on Intelligence: National Security Letters*, 110th Cong. (2007); *Hearing of the Senate Judiciary Subcommittee on the Constitution: Responding to the Inspector General's Findings of Improper Use of National Security Letters by the FBI*, 110th Cong. (2007); *Hearing of the House Judiciary Committee: FBI Patriot Act Misuse*, 110th Cong. (2007); *Hearing of the House Permanent Select Committee on Intelligence: The FBI's Use of National Security Letters and Section 215 Requests for Business Records*, 110th Cong. (2007).

13. In early 2007, the *New York Times* also reported that the DoD and the Central Intelligence Agency ("CIA") were issuing NSLs to demand sensitive credit and financial records about people in the United States without court approval, and in some instances, without any clear statutory authority to do so. Eric Lichtblau and Mark Mazzetti, *Military Expands Intelligence Role in U.S.*, N.Y. Times, Jan. 13, 2007; *see also Cheney Defends Taking of Americans' Bank Records*, Detroit Free Press, Jan. 15, 2007; David Savage, *Cheney Defends Pentagon*, L.A. Times, Jan. 15, 2007; *Officials: Pentagon*

*Probed Finances*, Wash. Post, Jan. 14, 2007; Julian E. Barnes and Greg Miller, *Pentagon Conducting Probes in U.S.*, L.A. Times, Jan. 14, 2007. These reports raised serious questions about the source of the DoD and the CIA's authority to issue NSLs and whether recipients were obligated to turn over records when presented with NSLs from those agencies. *See, e.g.*, Lichtblau and Mazzetti, *supra*.

14. In response to reports that the DoD and the CIA may have been abusing the NSL authority, or issuing NSLs without any legal authority whatsoever, the ACLU filed FOIA requests with the DoD and the CIA seeking the release of records concerning their use of NSLs. Subsequently, the ACLU filed a lawsuit to compel the production of these records.

15. In October 2007 and March 2008, the DoD released documents to plaintiffs which revealed that the FBI may be issuing NSLs at the behest of the DoD, thereby enabling the military to access information to which it is not otherwise entitled and to evade the limits on its own authority to issue NSLs. These revelations generated additional media interest reflecting continued concern over government abuse of the NSL authority. *See, e.g.*, Siobhan Gorman, *Pentagon Uses FBI to Collect Data on People in the U.S.*, Wall Street Journal, Apr. 2, 2008; Leslie Schulman, *DoD Using FBI to Circumvent Security Letter Limits: ACLU*, Jurist, Apr. 2, 2008; Larry Neumeister, *ACLU: Military Skirting Law to Spy*, Associated Press, Apr. 2, 2008; Editorial, *National Security: Going Wrong Way*, Seattle Post-Intelligencer, Oct. 17, 2007; Dahlia Lithwick, *The Dog Ate My Evidence: What Happens When the Government Can't Re-create the Case against You?*, Slate.com, Oct. 16, 2007; *Pentagon, FBI Misusing Secret Info Requests: ACLU*, Agence France Presse, Oct. 15, 2007; *New Docs Reveal DoD's Secret*

6

*Domestic Surveillance*, The North County Gazette, Oct. 15, 2007; *Morning Edition: Pentagon Accused of Domestic Spying*, (NPR radio broadcast Oct. 15, 2007); Karen Mathews, *Pentagon Faulted for 'Security Letters'*, Associated Press, Oct. 14, 2007; *All Things Considered: National Security Letters Sought for Defense Department Workers*, (NPR radio broadcast Oct. 14, 2007); Editorial, *Spies, Lies and FISA*, N.Y. Times, Oct. 14, 2007; Mark Mazzetti and Eric Lichtblau, *Pentagon Review Faults Bank Record Demands*, N.Y. Times, Oct. 13, 2007.

16.     Additionally, in September 2007, a federal district court judge found one of the NSL statute's non-disclosure provisions to be unconstitutional and struck down that entire NSL statute. *Doe v. Gonzales*, 500 F.Supp.2d 379 (S.D.N.Y. 2007). The court stayed its ruling pending the adjudication of the government's appeal. This decision reignited public concern about the government's authority to impose gag orders on NSL recipients. *See, e.g.*, Adam Liptak, *Judge Voids F.B.I. Tool Granted by Patriot Act*, N.Y. Times, Sep. 7, 2007; Dan Eggen, *Judge Invalidates Patriot Act Provisions*, Wash. Post, Sep. 7, 2007; Kevin Bohn, *Court Rules Part of Patriot Act Unconstitutional*, CNN, Sep. 7, 2007; Larry Neumeister, *Federal Judge Strikes Down Part of Patriot Act, Blasts Congress*, Associated Press, Sep. 7, 2007; Charlie Savage, *Judge Rules Against FBI Data-Gathering Tool*, Boston Globe, Sep. 7, 2007; Richard B. Schmitt, *Judge Strikes Down Part of Patriot Act*, L.A. Times, Sep. 7, 2007; John Nichols, *The Patriot Act -- and the Senate's -- Constitution Problem*, The Nation, Sep. 6, 2007; Ryan Singel, *Court Strikes Down Key Patriot Act Power Again*, Wired, Sep. 6, 2007.

17.     In March 2008, the OIG issued a second report about FBI NSL use. This report covered calendar year 2006 and evaluated the reforms implemented by the

7

Department of Justice and the FBI after the release of the 2007 OIG Report. The report found, among other things, that the FBI could not locate supporting documentation for 15% of NSLs and could not locate return information for more than 500 NSL requests; that the FBI diminished the seriousness of violations of internal controls and regulations by characterizing them as "administrative errors"; that even by the FBI's count there had been more than 600 potential violations that should have been reported to the Intelligence Oversight Board ("IOB"); and that the FBI improperly issued "blanket NSLs" to "cover information already acquired through exigent letters and other informal responses." With respect to the FBI's gag power, the audit revealed that the FBI imposed gag orders on 97% of NSL recipients, that some NSLs that imposed gag orders did not contain sufficient explanation to justify imposition of the gag orders, and that the FBI improperly imposed gag orders in eight of eleven "blanket" NSLs that senior FBI officials issued to cover illegal requests made through "exigent" letters.

18. The March 2008 OIG report also generated significant media attention and reignited public concern about the government's use and abuse of NSLs. *See, e.g.*, Dan Eggen, *FBI Chief Confirms Misuse of Subpoenas*, Wash. Post, Mar. 6, 2008; Eric Lichtblau, *F.B.I. Says Records Demands Are Curbed*, N.Y. Times, Mar. 6, 2008; Evan Perez, *FBI Chief Reveals More Privacy Lapses*, Wall Street Journal, March 6, 2008; John Solomon and William Branigin, *Lawmakers Vow Hearings on FBI Errors*, Wash. Post, Mar. 9, 2008; John Solomon and Barton Gellman, *Frequent Errors in FBI's Secret Records Requests*, Wash. Post, Mar. 9, 2008; Tim Grieve, *Inspector General: FBI is Misusing "National Security Letters,"* Salon.com, March 9, 2007.

**Plaintiffs' FOIA Request and Agency Reponse**

19.     In light of documents released to the ACLU by the DoD, and the continuing public concern about the FBI's abuse of the NSL authority and gag power, plaintiffs filed a FOIA Request with defendant FBI on November 29, 2007 which sought records created after September 11, 2001 concerning (1) "[t]he FBI's use or issuance of NSLs at the request of the DoD for use in DoD investigations"; (2) "[t]he FBI's use or issuance of NSLs for use in joint FBI/DoD investigations"; and, (3) "[t]he FBI's use or issuance of NSLs in non-FBI investigations." The Request also sought records regarding "[t]he FBI's use, implementation, and interpretation of its authority to impose non-disclosure obligations on NSL recipients since the NSL non-disclosure provisions were amended in March 2006."

20.     Plaintiffs sought expedited processing of the Request on the grounds that the records were urgently needed by an organization "primarily engaged in disseminating information" in order to "inform the public about actual or alleged Federal Government activity" and because the records related to a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 5 U.S.C. § 552 (a)(6)(E)(v); 28 C.F.R. § 16.5(d)(1)(ii); 28 C.F.R. § 16.5(d)(1)(iv).

21.     Plaintiffs also sought a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records was in the public interest and because disclosure was "likely to contribute significantly to the public understanding of the activities or operations of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552 (a)(4)(A)(iii); 28 C.F.R. § 16.11(k)(1)(i)-(ii).

Additionally, plaintiffs sought waiver of document and duplication fees on the grounds that the ACLU qualifies as a "representative of the news media" and the requested documents were not for commercial use. 28 C.F.R. § 16.11(c)(1)-(2); 28 C.F.R. § 16.11(d)(1).

22.  By letter to plaintiffs dated December 5, 2007, defendant FBI acknowledged receipt of the Request.

23.  To date, defendant FBI has not disclosed any records in response to plaintiffs' Request even though more than twenty days have elapsed since it was received, 5 U.S.C. § (a)(6)(A)(i) & 5 U.S.C. § (a)(3)(A), nor has the FBI responded to the ACLU's request for expedited processing or fee waiver.

### Plaintiffs' Entitlement to Expedited Processing

24.  Plaintiffs are entitled to expedited processing of their Request.

25.  Under the FOIA and defendant FBI's regulations, plaintiffs are entitled to expedited processing of their Request because there is a "compelling need" for the records at issue; specifically, the records are urgently needed by an organization "primarily engaged in disseminating information" in order to "inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(i)(I); 5 U.S.C. § 552(a)(6)(E)(v)(II); 28 C.F.R. § 16.5(d)(1)(ii). Plaintiffs are also entitled to expedited processing of their Request because it involves a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 5 U.S.C. § 552(a)(6)(E)(i)(II); 28 C.F.R. § 16.5(d)(1)(iv).

10

26.     Plaintiffs' Request concerns actual or alleged federal government activity. 28 C.F.R. § 16.5(d)(1)(ii). Specifically, plaintiffs seek records regarding the FBI's use (and potential abuse) of its NSL authority to demand information for non-FBI investigations, thereby enabling other agencies like the DoD to access information to which they are not otherwise entitled. Plaintiffs also seek records about the FBI's implementation of its power to gag NSL recipients.

27.     Plaintiffs' Request also implicates an urgent matter of public concern. The continuous and evolving coverage of this issue by both Congress and the media confirms that there is an urgent need to inform the public about how the FBI is using its NSL power, whether it is abusing that power by improperly issuing NSLs at the behest of other agencies, and whether it is improperly gagging NSL recipients.

28.     The ACLU is "primarily engaged in disseminating information" to the public within the meaning of the statute and regulations. 5 U.S.C. § 552(a)(6)(E)(v)(II); 28 C.F.R. § 16.5 (d)(1)(ii). Dissemination of information to the public is a critical and substantial component of the ACLU's mission and work. Specifically, the ACLU publishes educational and informational materials that are broadly circulated to the public including, but not limited to, newsletters, news briefings, and right-to-know documents. Such material is available to the public at no cost or for a nominal fee. The ACLU also disseminates information through its heavily visited website, www.aclu.org, and through its various affiliate offices located throughout the United States. The ACLU is also "primarily engaged in disseminating information" about NSLs, in particular. The ACLU has played a leading role in disseminating information about the use of NSLs on its

11

website, in widely publicized reports, through other FOIA requests, and substantive lawsuits challenging the government's NSL authority.

29. As the numerous and persistent press reports discussed above demonstrate, there continues to be widespread and exceptional media interest concerning the FBI's use of NSLs, as well as widespread concern that the FBI is abusing that power. Disclosure of records pertaining to the FBI's practice of issuing NSLs for non-FBI investigations, thereby enabling agencies like the DoD to circumvent the limits on their own authority, is vital to the public's understanding of the way in which the government as a whole is using NSLs to gather personal data about people in the United States. It is also vital to the public's understanding of the myriad ways the FBI is using (and potentially abusing) its NSL authority. The records will also shed light on whether the DoD is using the FBI to expand its own role in domestic surveillance.

30. Media coverage of the recent federal district court decision holding that the NSL statute's non-disclosure provisions were unconstitutional, as well as pervasive coverage of the OIG's March 2007 and 2008 reports, demonstrate that there remains widespread and exceptional media and public interest in how the FBI is using its NSL gag power. Disclosure of records pertaining to how the FBI has interpreted and implemented its power to gag NSL recipients since the NSL law was amended in 2006 is key to the public's understanding of the FBI's practice of imposing onerous secrecy obligations on NSL recipients, and will help the public to evaluate whether that power is being abused.

31. Thus, records concerning the FBI's use of NSLs at the behest of other agencies, as well as records concerning the FBI's implementation of its gag power, are

12

urgently needed to inform the public about "actual or alleged federal government activity." 28 C.F.R. § 16.5(d)(1)(ii). The records plainly also relate to a matter of widespread media interest regarding "questions about government integrity, which affects public confidence," 28 C.F.R. § 16.5(d)(1)(iv), and are crucial to providing the public with a full picture of the government's use of NSLs.

### Plaintiffs' Entitlement to a Waiver or Limitation of Processing Fees

32. The ACLU is entitled to a waiver of document search, review, and duplication fees because disclosure is in the public interest and because disclosure is "likely to contribute significantly to the public understanding of the activities or operations of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); 28 C.F.R. § 16.11(k)(1)(i)-(ii).

33. Numerous news accounts reflect the considerable public interest in the records plaintiffs seek. Given the ongoing and widespread media attention to this issue, the records sought in the instant Request will significantly contribute to public understanding of the operations and activities of and between the FBI and other government agencies. In addition, disclosure is not in the ACLU's commercial interest. As described above, any information disclosed by the ACLU as a result of this Request will be available to the public at no cost. Thus, a fee waiver would fulfill Congress' legislative intent in amending FOIA.

34. The ACLU is also entitled to a waiver of document reproduction fees because the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 28 C.F.R. § 16.11(c)(1)-(2); 28 C.F.R. § 16.11(d)(1).

## Causes of Action

35. Defendant's failure to make a reasonable effort to search for records responsive to the plaintiffs' Request violates the FOIA, 5 U.S.C. § 552(a)(3)(C), and defendant's corresponding regulations.

36. Defendant's failure to make promptly available the records sought by plaintiffs' Request violates the FOIA, 5 U.S.C. § 552(a)(3)(A), and defendant's corresponding regulations.

37. Defendant's failure to timely respond to plaintiffs' Request violates the FOIA, 5 U.S.C. § 552(a)(6)(A), and defendant's corresponding regulations.

38. Defendant's failure to grant plaintiffs' Request for expedited processing violates the FOIA, 5 U.S.C. § 552(a)(6)(E), and defendant's corresponding regulations.

39. Defendant's failure to grant waiver of document search, review, and duplication fees violates the FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), and defendant's corresponding regulations.

## Requested Relief

WHEREFORE, plaintiffs respectfully request that this Court:

1. Order defendant immediately to conduct a thorough search for all responsive records;

2. Order defendant to process all responsive records expeditiously;

3. Order defendant promptly to disclose the requested records in their entirety, and make copies available to plaintiffs;

4. Enjoin defendant from charging plaintiffs fees for the processing of their Request;

14

5. Award plaintiffs their costs and reasonable attorneys' fees incurred in this action; and

6. Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

L. DANIELLE TULLY (LT-0509)
MELISSA GOODMAN (MG-7844)
JAMEEL JAFFER (JJ-4653)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
Phone: 212-549-2500
Fax: 212-549-2583

ARTHUR N. EISENBERG (AE-2012)
New York Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004

April 15, 2008

15